Emery F. SALADIN, Rosemary H. Sala-
din, Robert A. Frisella, and Janice L.
Frisella,        Plaintiffs/Respon-
dents/Cross–Appellants,

and

Gary G. Wagner, Barbara J. Wagner,
Peter Rock, Sue Martin Rock, and
Cotton Building Company, Plain-
tiffs/Respondents,

v.

James JENNINGS, John Ploeger, Wil-
liam S. Verity as Trustees of Winding
Trails Subdivision and Winding Trails
Subdivision Homeowners Association,
Defendants/Appellants.

Nos. ED 81263, ED 81326.

Missouri Court of Appeals,
Eastern District,
Division One.

April 29, 2003.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 26, 2003.

Application for Transfer Denied
Aug. 26, 2003.

William J. Travis, Jennifer Alexander, David P. Weiss, St. Louis, MO, for appellant.

David L. Welsh, St. Louis, MO, for Respondents and Cross–Appellants.

ROBERT G. DOWD, JR., Presiding Judge.

This case centers on a private street, Eagles Nest Court, located within the Winding Trails Subdivision. The Trustees of the Subdivision (collectively referred to as Defendants) appeal from the trial court's grant of summary judgment in favor of Emery F. Saladin, Rosemary H. Saladin, Robert A. Frisella, Janice L. Frisella, Gary G. Wagner, Barbara J. Wagner, Peter Rock, Sue Martin Rock, and Cotton Building Company (collectively referred to as Plaintiffs). In a suit against Defendants, Plaintiffs sought declaratory relief and damages for Defendants' failure to maintain and repair Eagles Nest Court. On appeal, Defendants argue the trial court erred in (1) denying Defendants additional time to conduct discovery and granting Plaintiffs summary judgment on the issue of Defendants' duty to maintain Eagles Nest Court, (2) denying Defendants' motion to dismiss the petition for failure to join all lot owners abutting Eagles Nest Court, (3) granting Plaintiffs summary judgment in that Defendants had a duty to maintain Eagles Nest Court, and (4) granting Plaintiffs summary judgment in that the Sixth Amendment to the Subdivision Indenture is partially invalid. On cross-appeal, Plaintiffs argue the trial court erred in not awarding damages to Plaintiffs Saladin and Frisella for reim-bursement of snow removal expenses. We affirm.

Plaintiffs brought this suit against Defendants seeking declaratory relief and damages. In Count I, Plaintiffs sought a declaration that Defendants had a duty to maintain, repair, and upkeep Eagles Nest Court. In Count II, Plaintiffs sought a declaration that certain sections of the Sixth Amendment to the subdivision indenture were invalid. In Count III, Plaintiffs sought damages for monies expended by them in repairing and maintaining Eagles Nest Court. Plaintiffs filed their motion for partial summary judgment on Counts I and II. In response, Defendants filed an affidavit pursuant to Rule 74.04(c)(2) requesting additional time to conduct discovery. Defendants also filed their response in opposition to Plaintiffs' summary judgment motion. Both motions were argued before the trial court. The trial court granted Plaintiffs' partial summary judgment motion on Counts I and II and denied Defendants additional discovery time. Defendants then filed a motion to reconsider the partial summary judgement, which the trial court denied. A trial was held on Count III.

At the close of Plaintiffs' evidence, Defendants made a motion for judgment based on Plaintiffs' failure to join the remaining lot owners of Eagles Nest Court, who were necessary and indispensable parties. The trial court entered judgment against the Defendants in the amount of $24,755.00 and later amended the judgment and entered an award of damages in the amount of $25,832.50. Plaintiffs then sought an award of attorneys' fees and costs. The trial court denied this request. This appeal follows.

In reviewing a grant for summary judgment, we view the record in the light most favorable to the party against whom judg-

ment was rendered. *ITT Commercial Finance v. Mid–America Marine*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our review is essentially de novo. *Id.* Summary judgment will be upheld if there is no genuine issue of material fact and movant is entitled to judgment as a matter of law. *Id.* at 381.

In their first point, Defendants argue the trial court erred in denying Defendants additional time to conduct discovery. Defendants also argue summary judgment was improper because Plaintiffs were estopped from claiming Defendants had a duty to maintain the street. We disagree.

Rule 74.04(c)(2) gives the trial court broad discretion in ordering a period enlarged. The Rule provides, in pertinent part:

> If the party opposing summary judgment has not had sufficient time to conduct discovery on the issues to be decided in the motion for summary judgment, such party *shall file an affidavit describing the additional discovery needed in order to respond to the motion for summary judgment and efforts previously made to obtain such discovery.* For good cause shown, the court *may* continue the motion for summary judgment for a reasonable time to allow the party to complete such discovery. [emphasis added].

Here, Defendants were granted 30 additional days to respond to Plaintiffs' motion for summary judgment. Defendants then filed their response to Plaintiffs' motion in which they requested that the trial court continue the motion to allow Defendants a reasonable time to depose Plaintiffs. The trial court denied this request by ruling on the summary judgment motion.

■ Defendants argue the trial court committed reversible error by not allowing additional time for Defendants to review newly received information that Plaintiffs had performed work on the road and collected money for damages and to take depositions to develop their case. We are not persuaded by Defendants' argument. First, the affidavit filed with Defendants' response does not comply with Rule 74.04(c)(2) because it does not describe efforts previously made to obtain discovery. Instead, it merely stated that discovery is not complete because Defendants lacked an opportunity to depose Plaintiffs.[1] Second, Defendants cannot claim to be prejudiced by not deposing Plaintiffs before the hearing on Plaintiffs summary judgment motion because the deposition testimony did not first reveal that Plaintiffs had performed work on the road and collected money for damages. These facts were fully disclosed to Defendants in the affidavits of Plaintiffs Saladin and Cotton, filed with their summary judgment motion. As Defendants had opportunity to depose Plaintiffs and no new information was subsequently revealed by Plaintiffs' deposition testimony, Defendants cannot claim they were prejudiced.

■ Defendants also claim summary judgment was improper because Plaintiffs contradicted their position that Defendants had a duty to repair and maintain Eagles Nest Court when they performed work on the road and collected money for damages. Defendants contend Plaintiffs' actions show they independently maintained the road. Therefore, Defendants argue, Plaintiffs' actions support an estoppel defense. We disagree.

1. This argument is also flawed because the record reveals Defendants sought and received an additional 30 days in which to depose Plaintiffs but nonetheless failed to timely avail themselves of this opportunity.

■ Estoppel requires proof of an inconsistent act on behalf of Plaintiffs, action by the Defendants in reliance on Plaintiffs' act, and injury to the Defendants as a result of the contradictory act. *Brown v. State Farm Mut. Aut. Ins. Co.,* 776 S.W.2d 384, 388 (Mo. banc 1989). Here, Defendants argue Plaintiffs acted inconsistently to their position in this lawsuit by prosecuting claims relating to this lawsuit against Ortmann Construction (Ortmann) and Commonwealth Land Title (Commonwealth).[2] Based on these actions, Defendants argue, they did not assert authority over Eagles Nest Court and become involved in Plaintiffs' disputes with Ortmann and Commonwealth. Therefore, contend Defendants, they are prejudiced and unjustly saddled with the expenses of Eagles Nest Court.

Here, not all Plaintiffs prosecuted claims against Ortmann and those who did only did so after receiving refusal of the subdivision trustees acting under the Indenture to make claim against Ortmann. Further, the claim against Commonwealth was for the cost of relocating a portion of the road into the easement and not sought to be recovered in this lawsuit. Finally, the trial court's judgment in Count III gave Defendants full setoff for the Ortmann settlement proceeds. Defendants' estoppel defense fails. Point one is denied.

■ In their second point, Defendants argue the trial court erred in denying Defendants' motion to dismiss the petition for failure to join all lot owners abutting Eagles Nest Court. Specifically, Defendants contend all lot owners abutting Eagles Nest Court were indispensable parties. We disagree.

■ Rule 52.04(a) sets forth the joinder requirements, which apply to declaratory judgment actions. *Citizens Ins. Co. of America v. Leiendecker,* 962 S.W.2d 446, 450 (Mo.App. E.D.1998). Under Rule 52.04(a)(2), an "interest" compelling joinder must be such a direct claim upon the subject matter that the person will either gain or lose by direct operation of the judgment to be rendered.[3] *Missouri Nat. Educ. Ass'n v. Missouri State Bd. of Educ.,* 34 S.W.3d 266, 277 (Mo.App. W.D. 2000). Moreover, we have held that only in cases where an adjudication of title to real estate is sought are absent landowners necessary or indispensable parties. *Frye v. Shuman,* 806 S.W.2d 157, 159 (Mo. App. S.D.1991).

Here, the plat establishes Eagles Nest Court as an easement, and any claimed interest of the other lot owners in this suit relates to maintenance and repair obligations under the Indenture and not to ownership of the street. By the trial court's judgment declaring Defendants obligated under the Indenture to maintain and repair the street, the other lot owners have neither gained nor lost any right that existed prior to the judgment. In fact, the Indenture always vested the obligation of the street's maintenance and repair in Defendants. The trial court's judgment, therefore, benefited all the lot owners abutting Eagles Nest Court and provided

**2.** The record reveals Plaintiffs Saladin and Cotton had made claims against Ortmann and Commonwealth, respectively, relating to Eagles Nest Court. Ortmann paid Plaintiff Saladin approximately $10,000 for damage caused to Eagles Nest Court when Ortmann drove construction equipment over the road and damaged the asphalt surface. Plaintiff Cotton received money from Commonwealth because Eagles Nest Court was not properly located within the easement.

**3.** Rule 87.04, which Defendants argue Plaintiffs willfully ignore in their brief, essentially has the same import as Rule 52.04. In this case there is no adjudication of title to real estate and hence no "interest" within the meaning of Rule 87.04 or Rule 52.04.

complete relief. Contrary to Defendants' contention, there is no risk of exposure to double, multiple, or otherwise inconsistent obligations; and therefore, the lot owners are not necessary or indispensable parties as defined by Rule 52.04.[4] Point two is denied.

■ In their third point, Defendants argue the trial court erred in granting Plaintiffs summary judgment on the grounds that Defendants had a duty to maintain Eagles Nest Court. Specifically, Defendants argue the plain language of the Indenture and plat establishes Eagles Nest Court as a private street for the use and° benefit only of owners of lots 192 through 203. We disagree.

■ When interpreting parties' respective rights and obligations under a covenant, we must determine the intent of the parties as expressed in the plain language of the covenant. *Blevins v. Barry–Lawrence County Association for Retarded Citizens,* 707 S.W.2d 407, 408 (Mo. banc 1986).

Here, the original 1979 Indenture contemplated the establishment of private streets designated, established, and recited on the recorded plats of Winding Trails, including the private portion of Eagles Nest Court within Winding Trails Plat 13:

"... WHEREAS, as each of the subsequent plats of Winding Trails is recorded, First Party will adopt this Indenture of Trust and Restrictions and all provisions thereof for each of said plats; and

WHEREAS, *there may be designated, established and recited on the recorded plats of Winding Trails certain streets, common land, easements and any other non-public items which are for the exclusive use and benefit of the residents of Winding Trails* except those streets or easements which are or may hereafter be dedicated to public bodies and agencies, and which have been provided for the purpose of constructing, maintaining and operating sewers, pipes, poles, wires, storm water drainage, parks and other facilities and public utilities for the use and benefit of the residents of Winding Trails;

WHEREAS, *it is the purpose and intention of this Indenture to reserve said tract of land as a restricted neighborhood and to protect the same against certain uses* by the adoption of a sound urban environment plan and scheme of restrictions, and to apply that plan and scheme of restrictions to all of said land described in Exhibit 1, including all common land, and mutually to benefit, guard and restrict future residents of Winding Trails and to foster their health, welfare and safety; and

WHEREAS, all reservations, limitations, conditions, easements and covenants herein contained, any and all of which are sometimes hereafter termed "restrictions," are jointly or several for the benefit of all persons who may purchase, hold or reside upon, any of the lots covered by this instrument ..." [emphasis added]

As is clear from the language above, the Indenture provides that responsibility for maintenance of private streets rests on Defendants. Reinforcing this language is the language in Article IV of the Indenture captioned "Trustees' Duties and Powers." Section 2 of Article IV invests the Trust-

---

**4.** We agree with Plaintiffs that *Rogers v. Stanec,* 927 S.W.2d 422 (Mo.App. E.D.1996), which Defendants heavily rely upon in their brief, is inapplicable here. What evidence will be introduced or what positions non-party lot owners might advance is immaterial to the question of which party is obligated under the Indenture to maintain Eagles Nest Court.

ees with the right, power, and authority to "exercise such control over the . . . streets and roads (except for those . . . streets and roads dedicated to public use) . . . as may be shown on any recorded plat . . . as necessary to maintain, repair, rebuild, supervise and insure the proper use of such . . . streets and roads." Further, Article VI, Section 1(a) directs the Trustees to make assessments for the "purpose of enabling the Trustees . . . to maintain streets."

Defendants do not deny their duty under the Indenture to maintain private streets within the subdivision. Indeed, Defendants concede they "would have an obligation to maintain a private street if it was for the benefit of all the subdivision's residents."

Defendants argue with respect to Eagles Nest Court that the benefit is limited to the owners of the specified lots by the language in Plat 13. To support their argument, Defendants cite a portion of the language of Plat 13, which states: "EAGLES NEST . . . IS HEREBY ESTABLISHED AS A PRIVATE STREET FOR THE USE AND BENEFIT OF THE OWNERS OF LOT 192 THRU 203 OF THIS SUBDIVISION FOR ROAD PURPOSES AND INGRESS AND EGRESS." However, the complete language of the plat reads as follows:

"THE UNDERSIGNED, OWNERS OF THE TRACT OF LAND HEREIN PLATTED AND FURTHER DESCRIBED IN THE FOREGOING SURVEYOR'S CERTIFICATE HAVE CAUSED THE SAME TO BE SURVEYED AND SUBDIVIDED IN THE MANNER SHOWN ON THIS PLAT, WHICH SUBDIVISION SHALL HEREINAFTER BE KNOWN AS WINDING TRAILS PLAT 13. EAGLES NEST (50'W) COURT TOGETHER WITH ALL ROUNDINGS

LOCATED AT THE STREET INTERSECTIONS, AND CUL–DE–SACS WHICH FOR BETTER IDENTIFICATION ARE SHOWN HATCHED ON THIS PLAT ARE HEREBY DEDICATED TO ST. LOUIS COUNTY FOR PUBLIC USE FOREVER.

EAGLES NEST (50'W) COURT BEGINNING AT THE TERMINUS OF THE CUL–DE–SAC OF THAT PORTION OF EAGLES NEST (50'W) COURT WHICH IS DEDICATED TO PUBLIC USE FOREVER AS DEDICATED ABOVE, IS HEREBY ESTABLISHED AS A PRIVATE STREET FOR THE USE OF AND BENEFIT OF THE OWNERS OF LOT 192 THRU LOT 203 OF THIS SUBDIVISION FOR ROAD PURPOSES AND INGRESS AND EGRESS AND IS HEREBY DEDICATED TO ST. LOUIS COUNTY, MISSOURI, ST. LOUIS COUNTY WATER COMPANY, LACLEDE GAS COMPANY, UNION ELECTRIC COMPANY, SOUTHWESTERN BELL TELEPHONE COMPANY, METROPOLITAN ST. LOUIS SEWER DISTRICT, THEIR SUCCESSORS AND ASSIGNS AS THEIR INTERESTS MAY APPEAR FOR THE PURPOSES OF CONSTRUCTING, MAINTAINING AND REPAIRING OF PUBLIC UTILITIES AND SEWER AND DRAINAGE FACILITIES, WITH THE RIGHT OF TEMPORARY USE OF ADJACENT GROUND NOT OCCUPIED BY IMPROVEMENTS FOR THE EXCAVATION AND STORAGE OF MATERIALS DURING INSTALLATION, REPAIR OR REPLACEMENT OF SAID UTILITIES; SEWERS AND DRAINAGE FACILITIES.

\* \* \*

. . . THIS SUBDIVISION IS SUBJECT TO CONDITIONS AND RE-

STRICTIONS CONTAINED IN AN INSTRUMENT FILED IN BOOK 7166 PAGE 1366 IN THE ST. LOUIS COUNTY RECORDS."

The plat established the private portion of Eagles Nest Court as an easement. Specifically, it established the lower portion as an ingress and egress easement for the lot owners and provides that the plat is subject to the Indenture (referred to above as "AN INSTRUMENT FILED IN BOOK 7166 PAGE 1366 IN THE ST. LOUIS COUNTY RECORDS"), which clearly vests the responsibility for maintenance of the lower portion of Eagles Nest Court in Defendants. More importantly, there is no language in Plat 13, which imposes upon Plaintiffs the duty of the street's maintenance and repair.

There is no language either in the Indenture or the plat to support the Defendants' contention that the cost of maintenance is reserved exclusively to the owners of the adjoining lots. The overall intent of the Indenture was to include all private streets within the purview of Defendants' obligations, which contemplated the inclusion of Eagles Nest Court. Defendants argue that under the "expressio unius est exclusio alterius" rule of construction, which means that the expression of one thing is the exclusion of another, the plat language establishes Eagles Nest Court as a private road intended only for the use and benefit of the owners of lots 192 through 203. We are unpersuaded by this interpretation of the plat. Instead, we read the plat's language, as did the trial court and Plaintiffs, as only descriptive of the use and purpose of the street and not as an expression of intent to benefit exclusively a select group of lot owners. The trial court relied upon *Swingler v. Robinson*, 321 S.W.2d 29 (Mo.App.1959) for the proposition that maintenance of an easement lies with the benefiting easement holder, not the underlying fee owner. Here, the benefiting easement holder, as

provided for in the Indenture and Plat 13, was the subdivision as a whole. As such, the duty of the street's maintenance and repair was not imposed upon the adjoining lot owners, as underlying fee owners, but upon the subdivision through assessment fees. We find no genuine issue of material fact and agree with the trial court that Plaintiffs were entitled to summary judgment as a matter of law. Point three is denied.

■ In their fourth point, Defendants argue the trial court erred in granting Plaintiffs summary judgment motion on the grounds that the Sixth Amendment to the Subdivision Indenture is partially invalid. In particular, Defendants contend the Indenture contains no prohibition against changing Defendants' obligations with respect to maintenance and repair of public or private streets in the subdivision. We disagree.

Article VI, paragraph 6 of the Sixth Amendment provides that in any assessment year, Defendants may levy "an assessment on Lots fronting any private street in the Subdivision for the purpose of recovering or establishing a fund for the cost of snow removal or other private street related charges or expenditures. . . ." Defendants argue that through the procedures established by the Sixth Amendment, they have established a "reasonable, equitable means to fund only those services the Lot owners fronting the private street desire." Under Article VI, paragraph 8 of the Sixth Amendment, a levy on private street lots requires "a vote not less than sixty-five percent (65%)" of those lot owners fronting the private street who submit ballots on any private street assessment, the total number "representing not less than forty percent (40%) of all the lots fronting such private street," to vote in favor of the assessment. Alternatively, written consents from at least eighty percent of all Lot owners can ap-

prove a special street assessment. Relying on the holding in *Whispering Valley Lakes Improvement Ass'n v. Franklin County Mercantile Bank*, 879 S.W.2d 572, 574 (Mo.App. E.D.1994), Defendants argue that if the proper amendment procedure is followed, as is the situation here, the subject matter of the amendment should be held valid and left undisturbed. We find *Whispering Valley* inapplicable to the instant case and instead follow the reasoning of *Lakeshore Estates Recreational Area, Inc. v. Turner*, 481 S.W.2d 572, 575 (Mo. App. W.D.1972).[5]

▮▮▮▮ Property rights and obligations which arise as covenants imposed by subdivision restrictions may be changed by less than all property owners only if the changes are uniformly applied to all affected property owners. *Lakeshore*, 481 S.W.2d at 575. An amendment whose action is not uniform in application to all the property affected by the original covenant is void unless mutually agreed upon by all subject to the restriction. *Id.; See also Steve Vogli & Co. v. Lane*, 405 S.W.2d 885, 889–90 (Mo. banc 1966) (holding that restrictive covenants need not be uniform as to all lots when all lot owners approved the exemption).

Here, Defendants' refusal to provide for maintenance and repair of Eagles Nest Court together with the enactment of the Sixth Amendment constitute non-uniform treatment of all lots within the Indenture. Specifically, the Amendment attempts to alter,. abridge, or eliminate Defendants' duty to provide for the maintenance and repair of Eagles Nest Court or impose such costs only on owners whose lots front on Eagles Nest Court. Such actions by Defendants are void because imposing the burden of maintenance solely on those lot owners fronting on Eagles Nest Court is not uniformly applied.

Further, Plaintiffs bought their lots with the expectation of the benefit of maintenance of the street by Defendants pursuant to the Indenture. In exchange, they, like all other lot owners in the subdivision, are required by the Indenture to pay assessment fees to defray the cost of maintenance of all streets throughout the Winding Trails Subdivision. Plaintiffs bought their lots before the enactment of the Sixth Amendment, and their rights cannot be shifted from Defendants to the Plat 13 lot owners without their consent. The trial court properly granted summary judgment. Point four is denied.

In their sole point on cross appeal, Plaintiffs argue the trial court erred in not awarding damages to Plaintiffs Saladin and Frisella for reimbursement of snow removal expenses because such expenses were recoverable from Defendants in that the obligation of snow removal was within the duties of Defendants. We disagree.

▮▮▮▮ A trial court's findings as to what damages are recoverable are entitled to great weight on appeal and will not be disturbed unless we find that the damages awarded were clearly wrong, could not have been reasonably determined, or were excessive. *Montrose Savings Bank v. Landers*, 675 S.W.2d 668, 672 (Mo.App. W.D.1984). In general, the issue of damages is left to the sound discretion of the trial court as the trier of fact. *Carl v. Dickens*, 809 S.W.2d 466, 470 (Mo.App. S.D.1991). A court has wide discretion in its determination of damages. *D.L. Devel-*

---

**5.** We disagree with Defendants that the *Lakeshore* facts are "completely different" from those presented here. Defendants argue that they did not attempt to release some property owners from the burdens of the Indenture with a two-thirds vote. However, Defendants did precisely this when they passed the Sixth Amendment with the approval of two-thirds of the lot owners and in essence "released" themselves of their duties with respect to Eagles Nest Court.

*opment, Inc. v. Nance*, 894 S.W.2d 258, 261 (Mo.App. W.D.1995).

█ Here, in ruling on Count III of Plaintiffs' petition regarding damages, the trial court awarded Plaintiffs a net money judgment of $25, 832.50 which reimbursed Plaintiff Cotton for his costs of resurfacing of $37,155.00 less $10,022.50 for the Ortmann claim and $1,300 for unpaid assessments. Plaintiffs do not argue that the trial court's damage computations were wrong or could not have been reasonably determined. Rather, they argue the trial court failed to include $1,056.50 expended by Plaintiffs Saladin and Frisella for past snow removal. Evidence regarding the snow removal was presented to the trial court; and in its discretion, the trial court chose not to award damages for past snow removal. We find no abuse of discretion. Point denied.

Judgment affirmed.

HOFF and DRAPER, JJ., concur.