STERLING INVESTMENT GROUP, LLC, Plaintiff/Respondent,

v.

BOARD OF MANAGERS OF The BRENTWOOD FOREST CONDO-MINIUM ASSOCIATION, Defendant/Appellant.

No. ED 99341.

Missouri Court of Appeals, Eastern District, Division One.

May 21, 2013.

Steven H. Schwartz, Teresa M. Young, Todd A. Lubben, Brown & James, P.C., Frank Susman, St. Louis, MO, for appellant.

Mark Goodman, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Presiding Judge.

The Board of Managers (Board) of the Brentwood Forest Condominium Association (Association) appeals the trial court's declaratory judgment in favor of unit-owner Sterling Investment Group (Sterling).

We reverse and enter judgment in favor of the Board pursuant to Rule 84.14.

## Background

The Board is the governing body of the Association, which comprises 1,425 condo units. Sterling owns 27 of those units. Generally, an amendment to the Association's bylaws requires a supermajority (75%) of the owners. Exceptionally, however, the bylaws allow the Board to pass amendments without a vote of the owners to comply with federal housing and lending regulations. Specifically, as pertinent here, the Federal Housing Association will insure a mortgage secured by a condo unit only if the condo complex is at least 51% owner-occupied. 24 C.F.R. § 234.26(i)($l$)(iii). To satisfy this requirement, in December 2010, the Board invoked its compliance powers to amend the bylaws without a vote of owners. The amendment provided that, if the percentage of owner-occupied units dropped to 54% or less, then the Board would issue a warning letter informing owners that no new rentals would be approved until the percentage rebounded to 57% or better. The amendment exempted from this moratorium any units that were already rental units at the time of the Board's warning.

In March 2012, the Board determined that the percentage of owner-occupied units had dropped to 53%, but the Board declined to issue a warning letter in accordance with the 2010 amendment because it had since concluded that the moratorium was unfair to owners outside the established exemption. In June 2012, Sterling filed a petition for breach of fiduciary duty and injunctive and declaratory relief seeking enforcement of the 2010 amendment. The Board obliged by issuing a warning letter but subsequently passed a new amendment intended to replace the 2010 amendment. This new 2012 amend-

ment was substantially similar to the 2010 version except that it: created a presumption that rentals to family members were owner-occupied; created mechanisms whereby moratorium-exempt rental units would become non-exempt upon sale, owner-occupancy, or after 90 days vacant; and required owner-lessors to notify the Association of any vacancies. Essentially, the 2012 amendment had the same purpose of regulatory compliance, but it rectified inequities in the 2010 version and improved oversight processes to reduce the risk of inadvertent non-compliance.

Following the Board's 2012 amendment, Sterling filed an amended petition seeking invalidation of the 2012 amendment and enforcement of the 2010 amendment. Specifically, Sterling asserted that the Board lacked the authority under its compliance powers to pass the 2012 amendment without a vote of owners because the 2012 revision was merely administrative and not necessary to ensure regulatory compliance as was the original 2010 amendment. In response, the Board argued that its compliance powers necessarily extend to revisions of the amendment. In addition, the Board sought dismissal of the action for failure to join all owners as necessary parties.

The trial court took the case on the pleadings in October 2012 and entered judgment in favor of Sterling. The court found that the 2012 amendment was null and void and ordered the Board to comply with the 2010 amendment pursuant to its terms. The court also concluded that the other owners were not indispensable parties. The Board appeals those determinations.

## Discussion

### I. *Joinder of Other Owners*

■ First, the Board contends that the trial court erred by determining that the other owners weren't indispensable parties whose joinder was compulsory under Rules 52.04 and 87.04. This question is jurisdictional, and our review is guided by *Murphy v. Carron. Vahey v. Vahey*, 120 S.W.3d 288, 291 (Mo.App. E.D.2003) (citing *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976)). We will affirm the trial court's judgment unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy* at 32.

■ Rule 87.04 states that, "[w]hen declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration, and no declaration shall prejudice the rights of persons not parties to the proceedings." In determining which parties are required before the court, we consider the nature of relief requested and the interests to be adjudicated. *Jones v. Jones*, 285 S.W.3d 356, 360 (Mo.App. S.D.2009). An "interest" demanding joinder is not merely consequential, remote, or conjectural, but rather a direct claim on the subject of the action such that the joined party will win or lose by operation of the judgment. *Id.*

In determining if parties should be joined, we examine whether they are necessary and indispensable under Rule 52.04. Paragraph (a) of the rule states the test for whether a party is necessary:

(a) A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the

persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant.

█ The absence of a necessary party is not fatal to jurisdiction; the remedy is joinder. *Peasel v. Dunakey*, 279 S.W.3d 543, 545 (Mo.App. E.D.2009). However, if a necessary party cannot be joined, then the question becomes whether that party is indispensable such that a judgment in the party's absence is a nullity. *Jones*, 285 S.W.3d at 361. Paragraph (b) of the rule states the test for indispensability.

(b) If a person as described [in paragraph (a)] cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: (i) to what extent a judgment rendered in the person's absence might be prejudicial to that person or those already parties; (ii) the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (iii) whether a judgment rendered in the person's absence will be adequate; and (iv) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

█ "In determining if a party is indispensable, the preliminary question is whether the presence of such party is essential [*i.e.*, necessary] under Rule 52.04(a)." *State ex rel. Twenty–Second Judicial Circuit v. Jones*, 823 S.W.2d 471, 475 (Mo.1992). "If the answer is in the negative, no further consideration need be given to the indispensability of that party." *Id.* Following this instruction, we must first determine whether the other owners are necessary as described in paragraph (a) of Rule 52.04, which, as relevant here, resembles Rule 87.04 in its focus on the claim or interest of, and impact of the judgment on, the absent party.[1]

In support of its position that the other owners are necessary and indispensable (and conflating the two), the Board relies exclusively on *Epstein v. Villa Dorado Condo. Ass'n, Inc.*, 316 S.W.3d 457 (Mo. App. E.D.2010). There, two owners filed suit against their condo association to challenge a monetary assessment imposed on all owners to finance elevators serving only some. The plaintiffs purported to bring the action as representatives of a class of all owners not served by the elevators, and the trial court treated the matter as such, without any regard to the certification and notice requirements of Rule 52.08 governing class actions. For this, we held that the trial court erred by extending its judgment to all owners in the purported class without proper class certification. *Id.* at 461. Absent a valid class, we then noted that applying the judgment to all owners individually violated Rule 87.04 in that the absent owners were directly affected and "had an obvious interest in any judicial declaration regarding the elevators." *Id.* While sound on its facts, *Epstein* does not mandate joinder here. In *Epstein*, it was undisputed that the absent owners were interested and affected by the subject matter of the suit in a direct and monetary way, but their inclusion was procedurally

---

1. "Rule 87.04 ... essentially has the same import as Rule 52.04." *Saladin v. Jennings*, 111 S.W.3d 435, 445 fn. 3 (Mo.App.E.D. 2003).

defective. Here, by contrast, applying the tests of Rules 87.04 and 52.04, we are not persuaded that all owners in the 1,425–unit complex were necessary, much less indispensable, to resolve Sterling's complaint.

Although the Board diverts attention to the substance of the competing amendments, Sterling simply seeks interpretation and enforcement of the Association's bylaws as a matter of proper procedure. If, as Sterling insists, the board lacked authority to pass the 2012 amendment, then the 2010 version remains in effect and the Board must abide by its provisions. If, conversely, the board voted within its powers, then the 2012 version controls and the Board must abide by *its* provisions. Either way, the trial court can grant relief in the absence of the other owners. Rule 52.04(a)(1). Disposition in their absence will not impair or impede their ability to protect their own interest in enforcing the bylaws (52.04(a)(2)(i)), nor will it leave Sterling or the Board subject to a risk of multiple or inconsistent obligations (52.04(a)(2)(ii)). We find support for this reasoning in *Saladin v. Jennings,* 111 S.W.3d 435 (Mo.App. E.D.2003). There, several landowners sued the trustees of their subdivision claiming breach of the governing indenture and invalidity of an amendment therein. The defendant trustees sought dismissal of the petition for failure to join other landowners. The trial court denied the motion, and this court affirmed, explaining as follows.

> [A]ny claimed interest of the other lot owners in this suit relates to maintenance and repair obligations under the Indenture and not to ownership of the street. By the trial court's judgment declaring Defendants obligated under the Indenture to maintain and repair the street, the other lot owners have neither gained nor lost any right that existed prior to the judgment. In fact, the Indenture always vested the obligation of

the street's maintenance and repair in Defendants. The trial court's judgment, therefore, benefited all the lot owners abutting [the street] and provided complete relief. Contrary to Defendants' contention, there is no risk of exposure to double, multiple, or otherwise inconsistent obligations; and therefore, the lot owners are not necessary or indispensable parties ...

*Id.* at 440–441. Similarly here, any interest of the other owners relates to the Board's duty to comply with the bylaws. In this respect, they haven't gained or lost any right; they were always entitled to it. And the judgment benefits all owners and provides complete relief; the matter is resolved and there is no risk of inconsistent obligations.

We find additional support by implication in cases where individual owners sued their associations seeking a declaration interpreting or enforcing their bylaws, and the absence of other owners was never even questioned. See for example *Mullin v. Silvercreek Condominium Owners' Ass'n, Inc.,* 195 S.W.3d 484 (Mo.App. S.D. 2006) (declaratory action challenging validity of rental restriction in bylaws), and *Bitting v. Central Pointe Condominium Bd. of Managers,* 970 S.W.2d 898 (Mo.App. E.D.1998) (declaratory action challenging calculation of ownership percentages as stated in bylaws).

Applying the plain language of Rule 52.04(a) and informed by the foregoing authorities, we conclude that the other owners were not necessary parties to Sterling's action. Consequently, "no further consideration need be given to [their] indispensability." *Jones,* 823 S.W.2d at 475. The trial court did not err in denying the Board's motion to dismiss for failure to join the other owners. Point denied.

## II. *Validity of Amendments*

For its second point, the Board contends that the trial court erred in enforcing the 2010 amendment and declaring the 2012 amendment invalid. The court took the matter for judgment on the pleadings under Rule 55.27(b). Because a judgment on the pleadings presents a question of law, our review is *de novo*. *State ex rel. Kansas City Symphony v. State*, 311 S.W.3d 272, 274 (Mo.App. W.D.2010).

The trial court concluded, as Sterling argues here, that the Association's bylaws only permitted the Board to pass the 2010 amendment, after which any further changes required a vote of owners. The Board asserts that its powers are broader. The source of the Board's authority under the bylaws, section 24.5, states as follows:

**Compliance with FHA, V.A., FHLMC and FNMA Regulations:** The Board by ninety percent (90%) majority vote shall have the power to make any amendments to Condominium documents (including the Declaration and By–Laws) to comply with all requirements of the Federal Housing Administration ("FHA"), the Veteran's [sic] Administration ("VA"), the Federal Home Loan Mortgage Corporation ("FHLMC") and the Federal National Mortgage Association ("FNMA") pertaining to the qualifications for and purchase of FNMA or conventional home loans and mortgages to be secured by Units in the Condominium. The Developer and all Unit Owners agree that, notwithstanding anything to the contrary contained herein, in the event the Condominium does not comply with such governmental agency requirements, the Developer, acting as the Board, and the Board after being elected by the Unit Owners, shall have the power (on behalf of the Association and each and every Unit Owner) to enter into any agreement with such govern-

mental agencies or the mortgagees and/or to pass such amendments required by such entities as attorney in fact for the Unit Owners to Condominium documents to allow the Condominium to comply with such requirements. This includes making amendments to the Declaration and By–Laws of the Condominium to effectuate the purposes of this Section, so long as such amendment does not adversely affect the security interest of any mortgagee. The Board shall have discretion regarding the entering of such agreements or passing such amendments and may decline to so act if it feels the amendment or agreement would not be in the interest of the Association.

Corporate bylaws are construed according to general rules governing contracts. *DCW Enterprises, Inc. v. Terre du Lac Ass'n, Inc.*, 953 S.W.2d 127, 130 (Mo.App.1997). When there is uncertainty as to the meaning, the language must be interpreted in light of the context and subject matter. *Id.* Following these principles, we conclude that the Board's authority under the foregoing paragraph is indeed broad enough to encompass the 2012 amendment. The provision confers upon the Board the power and *discretion* to pass *any amendments* and even to enter into any agreements, essentially for the purpose of maintaining the Association's good standing with the named agencies. Simply put, matters having federal lending implications are handled at the Board level. This interpretation is consistent with the above language and is also the only practical construction. The alternative, advocated by Sterling, ignores the clear intent of the provision and, moreover, is wholly unworkable in practice. It is inconceivable that, after the Board's initial attempt at satisfying federal lending regulations, any subsequent revisions to

that end should require a supermajority of 1,425 unit owners. Rather, the above paragraph clearly and specifically removes regulatory compliance concerns from the scope of the owners' decision-making authority and instead vests in the Board all powers and discretion in such matters. The Board acted within its authority under the bylaws in enacting the 2012 amendment. The 2012 amendment is valid and supersedes the 2010 amendment. Point granted.[2]

### Conclusion

Rule 84.14 permits an appellate court to give such judgment as the court ought to give. *Hilton v. Davita, Inc.*, 302 S.W.3d 157, 159 (Mo.App.2009). Unless justice requires otherwise, the court shall dispose finally of the case. *Id.* We need not remand but may render the judgment that should have been rendered by the trial court. *Id.* at 159–160. In particular, it is appropriate for the appellate court to render judgment where there is no dispute as to the facts but only a dispute as to their legal significance. *Id.* at 160.

Consistent with these principles and invoking this court's authority under Rule 84.14, we reverse and vacate the trial court's judgment and enter judgment in favor of the Board. The 2012 amendment shall be enforced in accordance with its terms. The parties shall pay their own attorney fees. Costs are assessed to Sterling. Any claims not expressly resolved herein are dismissed as moot.

SHERRI B. SULLIVAN, and GLENN A. NORTON, JJ., concur.

---

**2.** We do not reach the parties' alternative arguments regarding the validity of the 2010 amendment. However, to exhaust any doubt, we note that § 448.2–117, cited in the trial court's judgment, is not applicable to the Association. § 448.1–102.