**Mary Katherine ESSIG, Appellant,**

v.

**Charles Eldon ESSIG, Respondent.**

No. WD 48881.

Missouri Court of Appeals,
Western District.

April 4, 1995.

---

J.D. Gorham, Richmond, for appellant.

George W. Lehnen, II, Richmond, for respondent.

Before SPINDEN, P.J., and ULRICH and SMART, JJ.

SPINDEN, Presiding Judge.

Mary Katherine Essig asked the trial court to set aside its decree dissolving her marriage to Charles Eldon Essig so it could reconsider the couple's division of property and whether she should receive maintenance. The trial court denied her request after deciding that too much time had transpired since it had entered its judgment. We reverse and remand the case for further proceedings.

The Essigs married on November 21, 1958, and they separated on May 21, 1993. Charles Essig filed a petition to dissolve the marriage six days after the separation. On the same day, the couple signed a separation agreement at the office of Charles Essig's attorney. The agreement said that the couple had no non-marital property, and it provided that each party would retain his or her clothing, jewelry, personal effects, and all furnishings, appliances, furniture, household goods, utensils and cooking ware then in his or her possession. It granted to Charles Essig all personal property in or around the marital home, two pickup trucks, three boat motors, a boat, a camper, a trailer, all rights in any insurance policies and retirement plans, credit union accounts of approximately $620, and a note receivable worth $6000. He also received the marital home, whose value was not specified, and the agreement provided that he would pay a $6000 debt against it and receive any escrow and insurance funds attached to it. It required Charles Essig to pay debts totaling $12,700. It provided that neither would pay maintenance to the other. It required Charles Essig to pay all attorney fees and costs associated with the separation agreement and divorce.

The trial court convened a dissolution hearing on June 20, 1993. Mary Essig appeared without an attorney. Charles Essig appeared and was represented by an attorney. The trial court questioned Mary Essig about her need for an attorney:

THE COURT: Mrs. Essig, I note that you are not represented by an attorney. You don't have to be represented by an attorney, but you have that right. You understand?

MRS. ESSIG: Yes.

THE COURT: Are you ready to proceed this morning in this case?

MRS. ESSIG: I guess so.

THE COURT: The Court will grant you time to employ an attorney if you feel that you need one.

MRS. ESSIG: I can't afford an attorney.

. . . .

THE COURT: As I understand it, this is a division of property that you have already signed a property settlement agreement.

MRS. ESSIG: Yes, I guess so.

THE COURT: I understand that it does involve practically all the property in this case.

MRS. ESSIG: Yes.

THE COURT: Are you satisfied with that division?

MRS. ESSIG: No, not really, but I have done it.

THE COURT: Do you want some time to get an attorney to advise you about that?

MRS. ESSIG: He doesn't want to wait.

THE COURT: It is not a question of what he wants. It is a question of whether or not—I want this on the record is what I am saying. You understand that?

MRS. ESSIG: Yes.

THE COURT: Do you want time to inquire about your rights with an attorney?

MRS. ESSIG: Well, I don't have the money to get an attorney.

THE COURT: Are you ready to proceed then this morning?

MRS. ESSIG: I guess.

THE COURT: You understand that this is a default matter, in effect?

MRS. ESSIG: Yes.

THE COURT: You may proceed.

After the hearing, the trial court entered its decree. It found that the separation agreement was not unconscionable and that both parties waived maintenance. The decree ordered the marriage dissolved, denied maintenance to both parties, ordered the parties to perform all terms of the separation agreement and taxed costs to Charles Essig.

On December 7, 1993, Mary Essig filed a motion pursuant to Rule 74.06 requesting the trial court to set aside the divorce decree. She sought the court's review of provisions which denied maintenance and which ordered performance of the separation agreement. She also sought the court's finding that the separation agreement was unconscionable in its division of property and waiver of maintenance. She alleged in her motion:

1. On May 21, 1993, [the Essigs] separated; on May 27, 1993, at [Charles Essig's] request, she went to his attorney's office where she received copies of the Petition herein and a notice of hearing on same, and was asked to and did sign an entry of appearance and separation agreement and various title documents and, although she did read portions of the separation agreement, she did not read it carefully and did not understand all of its provisions.

2. At various times after May 27 she talked with [Charles Essig] and he assured her that their property would be divided equally between them and that he would see that she got her share; on June 25, 1993, [she] asked [Charles Essig] to postpone the divorce hearing scheduled for June 30, 1993, to enable her to retain an attorney to represent her and review the separation agreement, but [Charles Essig] persuaded her not to retain an attorney and assured her that all marital property would be divided equally after the divorce, specifically mentioning that he would give her some $1,200.00 he would receive by the end of July, 1993 from the sale of a marital camper.

3. On June 30, 1993, the Court entered its Decree pursuant to a hearing at which [Mary Essig], believing and relying upon [Charles Essig's] previous promises to make an equal division of the marital property, testified in support of the separation agreement.

4. After June 30, 1993, to this date, [Charles Essig] has failed to fulfill his promise to share any marital property with [Mary Essig] except for approximately $500.00 worth of personal property he delivered to her on July 27, 1993 which, combined with approximately $560.00 worth of personal property [Mary Essig] took with her at separation, gives [her] some $1,060.00 worth of personal property as the total share of all marital property apportioned to her under the separation agreement and Decree.

5. [Charles Essig's] total share of all marital property under the separation agreement and Decree is valued at more than $86,000.00....

6. [The couple was] married over thirty-four (34) years, during which time [Mary Essig] was a homemaker and raised the children; with the exception of a ten year period from approximately 1969 until November of 1979 when she worked at Missouri Valley Headstart for minimum wage, she has never been gainfully employed outside the home and she now lives by caring for a friend's grandchildren in exchange for room, board and payment of some expenses, and she is experiencing some health problems and is unable adequately to support herself.

7. [Mary Essig] is unable to afford an attorney to represent her and has borrowed the money necessary to employ the undersigned attorney to attempt to retain relief from the Decree.

8. [Mary Essig's] willingness to allow [Charles Essig] to obtain a speedy divorce and without [her] consulting with counsel and upon the terms specified in the separation agreement was based solely upon [Charles Essig's] repeated promises to divide equally with [her] the parties' marital property notwithstanding the terms of the agreement, and [her] reliance upon these promises were reasonable because historically over the parties' marriage [Charles Essig] kept his word when he promised to do so.

The trial court held a hearing on the motion on December 29, 1993. Without hearing any evidence, the trial court overruled the motion. It expressed doubt about its power to reopen the decree:

I am not ... so sure that I have [the power to open up the decree] because there has been no showing of fraud. These oral promises may or may not have been made, but that isn't necessarily a showing of fraud on the Court because at the time of the division they were both in complete agreement.

....

I don't think the motion is in time....

....

[I]f you had caught me within the first 30 days, I would have done it. The Court overrules the said motion for all those reasons. I think I have lost complete jurisdiction over the case to even do it.

In her appeal, Mary Essig asserts that Rule 74.06 gave the trial court authority to set aside the dissolution decree. Although the trial court focused on fraud, the rule sets out five categories for which a judgment can be set aside:

(b) ... On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is irregular; (4) the judgment is void; or (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment remain in force.

Moreover, Rule 74.06(c) mandates that the motion be made within "a reasonable time" and, in any case, less than a year.

The trial court erred in concluding that time prevented it from considering Mary Essig's motion. It was well within the one year requirement. Less than six months was certainly a reasonable time.

Moreover, the facts set forth in her motion, if supported by evidence, could have supported a finding of misrepresentation under Rule 74.06(b). This court's Southern District ruled, in *In re Marriage of Pfeifer*, 862 S.W.2d 926, 929–30 (Mo.App.1993), that an averment that an ex-spouse's promise to take care of the movant could be deemed a misrepresentation of present state of mind if the promise was made with an intent not to perform and could constitute actionable fraud.

The trial court made evident that, but for its mistaken view that it was powerless to consider Mary Essig's motion, it would have

done so. It was not powerless, and it had a duty to consider her motion. Hence, we reverse and remand for the trial court to consider her evidence in support of her motion.

All concur.