Mark D. Pfeiffer, Judge
The Missouri State Conference for the National Association for the Advancement of Colored People ("MoNAACP"), the League of Women Voters of Missouri ("MoLWV"), and Ms. Christine Dragonette ("Dragonette") (collectively, "Appellants") appeal from the Judgment of the Circuit Court of Cole County, Missouri ("trial court"), granting the State of Missouri's *142 ("State") and Missouri Secretary of State John R. Ashcroft's ("Secretary of State") (collectively, "Respondents") motions for judgment on the pleadings, and dismissing without prejudice Appellants' declaratory judgment and injunctive relief action challenging enforcement of the personal identification requirements of section 115.427[1] ("Voter ID Law"). We reverse the entry of judgment on the pleadings and remand for further proceedings consistent with this opinion.
Factual and Procedural Background[2]
The Voter ID Law became effective June 1, 2017. House Bill No. 1631 repealed the text of section 115.427 of the Missouri Revised Statutes, and replaced it with new text. Under the newly effective provisions:
Persons seeking to vote in a public election shall establish their identity and eligibility to vote at the polling place by presenting a form of personal identification to election officials. No form of personal identification other than the forms listed in this section shall be accepted to establish a voter's qualifications to vote. Forms of personal identification that satisfy the requirements of this section are any one of the following:
(1) Nonexpired Missouri driver's license;
(2) Nonexpired or nonexpiring Missouri nondriver's license;
(3) A document that satisfies all of the following requirements:
(a) The document contains the name of the individual to whom the document was issued, and the name substantially conforms to the most recent signature in the individual's voter registration record;
(b) The document shows a photograph of the individual;
(c) The document includes an expiration date, and the document is not expired, or, if expired, the document expired after the date of the most recent general election; and
(d) The document was issued by the United States or the state of Missouri;
or
(4) Any identification containing a photograph of the individual which is issued by the Missouri National Guard, the United States armed forces, or the United States Department of Veteran Affairs to a member or former member of the Missouri National Guard or the United States armed forces and that is not expired or does not have an expiration date.
§ 115.427.1. The statute permits persons without the listed forms of identification to cast regular or provisional ballots in certain circumstances, described in sections 115.427.2 through .4.
In addition to requiring a voter to establish his or her qualifications to vote by presenting a satisfactory form of personal identification prior to voting in person, section 115.427 imposes obligations upon the Secretary of State, the Department of Revenue, and other government agencies and entities. Section 115.427.5 requires the Secretary of State to:
provide advance notice of the personal identification requirements of subsection 1 of this section in a manner calculated *143 to inform the public generally of the requirement for forms of personal identification as provided in this section. Such advance notice shall include, at a minimum, the use of advertisements and public service announcements in print, broadcast television, radio, and cable television media, as well as the posting of information on the opening pages of the official state internet websites of the secretary of state and governor.
Section 115.427.6(1) requires the State and all fee offices to "provide one nondriver's license at no cost to any otherwise qualified voter who does not already possess such identification and who desires the identification in order to vote." The State and its agencies are further required to:
provide one copy of each of the following, free of charge, if needed by an individual seeking to obtain a form of personal identification described in subsection 1 of this section in order to vote:
(a) A birth certificate;
(b) A marriage license or certificate;
(c) A divorce decree;
(d) A certificate of decree of adoption;
(e) A court order changing the person's name;
(f) A social security card reflecting an updated name; and
(g) Naturalization papers or other documents from the United States Department of State proving citizenship.
Any individual seeking one of the above documents in order to obtain a form of personal identification described in subsection 1 of this section in order to vote may request the secretary of state to facilitate the acquisition of such documents. The secretary of state shall pay any fee or fees charged by another state or its agencies, or any court of competent jurisdiction in this state or any other state, or the federal government or its agencies, in order to obtain any of the above documents from such state or the federal government.
§ 115.427.6(2). Furthermore:
Any applicant who requests a nondriver's license for the purpose of voting shall not be required to pay a fee if the applicant executes a statement, under penalty of perjury, averring that the applicant does not have any other form of personal identification that meets the requirements of this section. The [S]tate of Missouri shall pay the legally required fees for any such applicant. The director of the department of revenue shall design a statement to be used for this purpose. The total cost associated with nondriver's license photo identification under this subsection shall be borne by the [S]tate of Missouri from funds appropriated to the department of revenue for that specific purpose. The department of revenue and a local election authority may enter into a contract that allows the local election authority to assist the department in issuing nondriver's license photo identifications.
§ 115.427.6(4). Section 115.427.6(3) provides that "[a]ll costs associated with the implementation of this section shall be reimbursed from the general revenue of this state by an appropriation for that purpose. If there is not a sufficient appropriation of state funds, then the personal identification requirements of subsection 1 of this section shall not be enforced ." (Emphasis added.)
On June 8, 2017, MoNAACP and MoLWV filed a petition for injunctive and declaratory relief against the State, the Secretary of State, and the Board of Election Commissioners for the City of St. Louis. Count I alleged that section 115.427 was unenforceable because the General *144 Assembly did not appropriate sufficient state funds from the general revenue for the purpose of paying the costs associated with the statute's implementation. Count II alleged that section 115.427 violated article X, sections 16 and 21 of the Missouri Constitution (the Hancock Amendment) by requiring new or expanded activities by local election authorities without full state financing.
On June 30, 2017, MoNAACP and MoLWV filed a first amended petition, adding Christine Dragonette, a resident of St. Louis and director of the state-issued-personal-identification acquisition program at St. Francis Xavier College Church, as a plaintiff, and naming as defendants the State, the Secretary of State, and the Director of the Department of Revenue. Appellants added a third count for specific performance, alleging that Respondents "have not carried out necessary activities to ensure that the statute is implemented as intended."
On August 29, 2017, the Secretary of State moved to dismiss the first amended petition, and the State and the Director of the Department of Revenue moved for judgment on the pleadings. On October 10, 2017, Appellants dismissed Counts II (Hancock Amendment) and III (specific performance) of their amended petition. On November 9, 2017, the trial court held a hearing on the remaining count of the amended petition (the allegation that section 115.427 cannot be enforced because there were insufficient appropriations to comply with the statute), heard the arguments of counsel, and took the matter under advisement.
On November 22, 2017, Appellants moved for leave to file a second amended petition. On December 6, 2017, the trial court entered judgment, granting the Secretary of State's motion to dismiss, granting the State's motion for judgment on the pleadings, granting the Director of Revenue's motion for judgment on the pleadings, dismissing the first amended petition without prejudice, and granting Appellants leave to file their second amended petition.
In the second amended petition, Appellants more specifically alleged[3] that the legislature had not provided a sufficient appropriation of state funds from the general revenue for the purpose of paying the costs associated with the implementation of section 115.427 relating to state and federal 2018 elections. Appellants requested that the trial court enter a declaratory judgment that the identification requirements of section 115.427.1 may not be enforced and issue a permanent injunction prohibiting the State from enforcing section 115.427.1. They alleged that for implementation of section 115.427 in Fiscal Year 2017, $80,000 of general revenue funds were appropriated to the Department of Revenue, and no funds were appropriated to the Secretary of State. Furthermore, they alleged that for implementation of section 115.427 for Fiscal Year 2018, $1.5 million had been appropriated to the Secretary of State, and $100,000 had been appropriated to the Department of Revenue. They alleged that no funds were appropriated to any other agency of the State, to the courts, or to any political subdivision to implement section 115.427 in *145 Fiscal Year 2018-from general revenue or any other source-and there had been no supplemental appropriations related to the implementation of section 115.427 for Fiscal Year 2018.
Appellants asserted that the legislature failed to provide a sufficient appropriation of state funds from the general revenue for the purpose of paying the costs associated with the implementation of section 115.427, resulting in an inadequate implementation of the statute. Specifically, Appellants contended that the Secretary of State failed to provide advance notice under the specific terms set forth under section 115.427.5, resulting in the general public not receiving adequate advance notice of the Voter ID Law. Further, Appellants alleged that, based on the stated appropriation of state funds, the Secretary of State would be unable to pay for the cost of the documents necessary for individuals to obtain nondriver's licenses in the State of Missouri.
According to Appellants, the Secretary of State and Department of Revenue's combined expressly mandated and reasonably necessary implementation costs would total nearly $6 million, which is more than 350% of the actual appropriation. Appellants alleged that they have been and will be required to shift their resources to do for their members and the public what section 115.427 mandates that the State do. Appellants asserted that because the appropriation to implement section 115.427 was insufficient, under section 115.427.6(3), "then the personal identification requirements of subsection 1 of this section shall not be enforced."
The Secretary of State and the State each filed answers and moved for judgment on the pleadings. The Secretary of State asserted that the trial court should dismiss the second amended petition because it failed to state a claim and was not ripe for adjudication. The Secretary of State argued that "plaintiffs have failed to allege actual costs of implementation," and the claim that appropriations for Voter ID implementation were insufficient to reimburse costs was not ripe until either: (1) actual costs exceeded current appropriations for Fiscal Year 2018; or (2) actual costs for Fiscal Year 2018 were not reimbursed by appropriations for Fiscal Year 2018, which runs from July 1, 2017, to June 30, 2018. The Secretary of State further asserted that local election authorities ("LEAs"), none of which were named as a defendant, were necessary and indispensable parties if injunctive relief was sought to prohibit enforcement of the Voter ID Law.
The State also asserted that the trial court should dismiss the second amended petition because it failed to state a claim and was not ripe for adjudication. The State argued that the Voter ID Law does not require the State to pay for anticipated costs of implementation up front; instead, according to the State, section 115.427.6(3) bars enforcement of the voter identification requirements only if there was not a sufficient appropriation of state funds to reimburse costs associated with implementation of the Voter ID Law, and Appellants failed to allege facts showing that the General Assembly made an insufficient appropriation of state funds to reimburse costs associated with implementation. The State further asserted that sovereign immunity precluded claims against it.
Thereafter, on January 2, 2018, the trial court entered judgment, finding that "the Second Amended Petition fails to state a claim for which relief can be granted and Defendants are entitled to judgment as a matter of law," granting Respondents' motions for judgment on the *146 pleadings, and dismissing Appellants' second amended petition without prejudice.[4]
Appellants timely appealed.
Standard of Review
The appellate court conducts a de novo review of a trial court's grant of a motion for judgment on the pleadings based on the failure to state a claim. Lake v. Levy , 390 S.W.3d 885, 889 (Mo. App. W.D. 2013). " 'The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings.' " Id. (quoting Eaton v. Mallinckrodt, Inc. , 224 S.W.3d 596, 599 (Mo. banc 2007) ). " 'The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion.' " Id. (quoting Eaton , 224 S.W.3d at 599 ).
"In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." Id. (internal quotation marks omitted). "If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim." Id. (internal quotation marks omitted). "We review the law only to ascertain whether [Appellants'] interpretation is viable, thereby stating a claim for relief in [their] petition." Id. "If [Appellants'] petition states a claim upon which relief can be granted, then judgment on the pleadings was not appropriate." Id.
Analysis
Sovereign Immunity
As a threshold issue, we address the argument of whether Appellants failed to state a claim upon which relief could be granted on the ground raised by the Secretary of State that the State is entitled to sovereign immunity as a matter of law because the State did not consent to be sued.
Appellants alleged that the State is the entity responsible for the implementation and enforcement of section 115.427, including the statute's restriction on the ways that registered voters must identify themselves in order to exercise their right to vote in person, and the statute's provision of free nondriver's licenses and underlying documents for voters who lack them. Appellants further alleged that the Secretary of State is the State's chief elections official and is responsible for the implementation across the State of laws related to voting, including section 115.427, and for enforcing the photo ID requirements of section 115.427.
In 1977, the Missouri Supreme Court prospectively abrogated the common law doctrine of sovereign immunity for tort actions in Jones v. State Highway Commission , 557 S.W.2d 225 (Mo. banc 1977). In response, the Missouri Legislature enacted §§ 537.600-.650 (1978), which reinstated portions of the doctrine. The sovereign *147 immunity restored by section 537.600 "is immunity 'from liability and suit for compensatory damages for negligent acts or omissions,' not immunity from claims for equitable relief." Wyman v. Mo. Dep't of Mental Health , 376 S.W.3d 16, 23 (Mo. App. W.D. 2012). "An injunction and declaratory judgment are equitable remedies." Ballard v. City of Creve Coeur , 419 S.W.3d 109, 117 (Mo. App. E.D. 2013). Appellants sued the State for violating its duties and obligations relating to the funding and implementation of the Voter ID Law and sought prospective equitable relief in the form of a declaratory judgment and an injunction.
In Wyman , state employees filed suit against the Missouri Department of Mental Health and one state official alleging that the defendants retaliated against the plaintiffs for exercising their rights under the Workers' Compensation Law. Wyman , 376 S.W.3d at 18. The court found that plaintiffs' claims for damages were barred, but concluded "that sovereign immunity does not necessarily bar a claim for injunctive relief which seeks to reverse a state agency's prior violation of its statutory obligations, or to prevent future violations." Id. at 23.
As pointed out by the court in Church v. Missouri , 268 F.Supp.3d 992 (W.D. Mo. 2017), in Wyman , the State argued in its briefing on appeal that a claim for injunctive relief "is contrary to the fundamental principle of sovereign immunity and the State's right to determine what types of lawsuits may be brought against the State. Fundamentally, sovereign immunity concerns the State's ability to consent or refuse to consent to sue or be sued." Id. at 1010. Nevertheless, we opined that, where it was alleged that the State had violated a statutory "duty and obligation," a plaintiff may seek equitable relief against the State, "even though the State may not be subject to the 'civil action for damages. ' " Wyman , 376 S.W.3d at 24. Additionally, the Missouri Supreme Court has upheld injunctions against the State itself. See Weinschenk v. State , 203 S.W.3d 201, 205 (Mo. banc 2006) (affirming the trial court's judgment enjoining enforcement of the now repealed prior statute requiring presentation of photo ID in order to vote).
Thus, Appellants' claims against the State are not precluded by the doctrine of sovereign immunity.
Ripeness
As another threshold issue, we address the argument of whether Appellants failed to state a claim upon which relief could be granted on the ground that Appellants' suit is not ripe for adjudication. Again, we note that our review at this juncture is to accept as true all facts alleged in the petition and we must construe those facts in a light most favorable to the pleader. Anderson v. Crawford , 309 S.W.3d 863, 866 (Mo. App. W.D. 2010).
Appellants' second amended petition was filed November 22, 2017, and alleged that for Fiscal Year 2018, the General Assembly appropriated only $1.5 million to the Secretary of State and only $100,000 to the Department of Revenue. Appellants alleged that the expressly mandated and reasonably necessary implementation costs as requested by the Secretary of State and the Department of Revenue would total nearly $6 million. Appellants further alleged that no funds from general revenue or any other source had been appropriated to any other agency of the State, to the courts, or to any political subdivision to implement section 115.427 in Fiscal Year 2018, and there had been no supplemental appropriations related to the implementation of section 115.427 for Fiscal Year 2018. Appellants contended that the legislature failed to provide a sufficient *148 appropriation of state funds from the general revenue for the purpose of paying the costs associated with the implementation of section 115.427, which resulted in an inadequate implementation of the statute.
Respondents asserted that Appellants' challenges were not ripe because the State had until the end of its fiscal year (June 30, 2018) to appropriate funds and reimburse costs incurred in implementing the Voter ID Law.[5]
"[T]he question of ripeness turns on whether the facts are sufficiently developed to permit a conclusive adjudication of the issue presented." Newman v. City of Warsaw , 129 S.W.3d 474, 478 (Mo. App. W.D. 2004). "Put another way, '[a] ripe controversy exists if the parties' dispute is developed sufficiently to allow the court to make an accurate determination of the facts, to resolve a conflict that is presently existing, and to grant specific relief of a conclusive character.' " Id. (quoting Mo. Health Care Ass'n v. Atty. Gen. of the State of Mo. , 953 S.W.2d 617, 621 (Mo. banc 1997) ). To be ripe for judicial determination, a controversy must be "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Mo. Health Care Ass'n , 953 S.W.2d at 621.
The Voter ID Law requires that the State provide the general public with advance notice of the personal identification requirements contained in the law. Missouri voters must take action, but incur no costs, in order to secure their ability to vote. The statute provides that, if there is not "a sufficient appropriation of state funds" to pay "[a]ll costs associated with the implementation of this section," then the personal identification requirements "shall not be enforced." Notably, section 115.427.6(3) makes the enforceability of the identification requirements contingent on "a sufficient appropriation," not on "sufficient implementation " of the statute by the Secretary of State or other agencies. We conclude that the sufficiency of appropriations to cover the costs of implementing the Voter ID Law presents a ripe controversy without awaiting the Respondents' actual incurrence of costs to implement the statute, or the conclusion of the fiscal year to which the appropriations apply. As we explain below in our discussion of whether the petition adequately states a claim for relief, appropriations are forward-looking authorizations for the expenditure of funds by state agencies; we fail to see why the sufficiency of all or any appropriations could only be addressed after all appropriated funds have actually been expended. The possibility of additional appropriations not yet enacted does not affect the ripeness of a challenge to earlier appropriations.
Respondents cite the Missouri Supreme Court's decision in Schweich v. Nixon , 408 S.W.3d 769, 778-79 (Mo. banc 2013), to support their ripeness argument. In Schweich , the State Auditor challenged the Governor's withholding of certain funds from the legislative appropriation to the Auditor's office. The Supreme Court held that the challenge to the Governor's withholding decision was not ripe until the end of the fiscal year. Id. at 779. The Court reasoned that, until the end of the fiscal year, "it could not be known whether the *149 Governor merely was exercising his constitutional authority to control the rate of [expenditure] of these funds or whether they were being withheld ... entirely," and the Governor's authority to withhold the appropriated funds depended on whether "actual revenues were less than revenue estimates by the end of FY 2012." Id. Thus, in Schweich , it was unknowable until the end of the fiscal year whether a permanent withhold of appropriated funds had even occurred, or whether the circumstances which would justify such a permanent withhold existed. This case is distinguishable: here, it is undeniable that the General Assembly has actually made its appropriations to the Secretary of State's office, and the enforcement of the Voter ID Law's identification requirements is expressly made contingent on the sufficiency of those appropriations. Awaiting the end of a fiscal year before assessing the adequacy of a particular appropriation would potentially permit the identification requirements to be enforced in elections where funding was insufficient to adequately implement the law, contrary to the evident intent of section 115.427.6(3).
Thus, Appellants' claims are not precluded based on the ground that Appellants' suit is not ripe for adjudication.
Necessary and Indispensable Parties
The final threshold issue we address concerns whether Appellants failed to state a claim upon which relief could be granted on the ground raised by the Secretary of State that LEAs were necessary and indispensable parties for purposes of enjoining the identification provisions of the Voter ID Law.
In the second amended petition, Appellants alleged that the State is the entity responsible for the implementation and enforcement of section 115.427, including the statute's restriction on the ways that registered voters must identify themselves in order to exercise their right to vote in person, and the statute's provision of free nondriver's licenses and underlying documents for voters who lack them. Appellants further alleged that the Secretary of State is the State's chief elections official and is responsible for the implementation across the State of laws related to voting, including section 115.427, and for enforcing the photo ID requirements of section 115.427. "There is a subtle difference between the concept of the necessary party and an indispensable party." Edmunds v. Sigma Chapter of Alpha Kappa Lambda Fraternity, Inc. , 87 S.W.3d 21, 27 (Mo. App. W.D. 2002). "A necessary party is a party meeting the description set forth in Rule 52.04(a)." Id. Rule 52.04(a) provides:
A person shall be joined in the action if: (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest. If the person has not been joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant.
The relief Appellants sought in their second amended petition was a declaratory judgment that the identification requirements of section 115.427.1 may not be enforced by the State and a permanent injunction prohibiting the State from enforcing section 115.427.1. The relief was *150 not directed to the LEAs. In neither the motion for judgment on the pleadings nor the motion to dismiss did the Secretary of State explain why injunctive relief could not be granted without the LEAs as parties or why a declaratory judgment that the identification requirements of the statute were unenforceable would not be binding on the LEAs. In Weinschenk , 203 S.W.3d at 205, the Missouri Supreme Court affirmed the trial court's judgment against the State and Secretary of State, enjoining enforcement of the photographic identification requirement of the now repealed prior Voter ID Law. Here, the Secretary of State "fails to demonstrate that merely being affected by an adjudication is sufficient qualification to constitute one a necessary or indispensable party." Edmunds , 87 S.W.3d at 27. "The absence of a necessary party is not fatal to jurisdiction. The remedy for failure to join a necessary party is by motion to add a necessary party rather than by a motion to dismiss." Id. (citation omitted).
"A party must first be found necessary to a lawsuit before we consider whether that party is indispensable." Heitz v. Kunkel , 879 S.W.2d 770, 771 (Mo. App. S.D. 1994). Because the Secretary of State has not established that the LEAs were necessary parties to Appellants' action, "no further consideration need be given to [their] indispensability." Sterling Inv. Grp., LLC v. Bd. of Managers of Brentwood Forest Condo. Ass'n , 402 S.W.3d 95, 99 (Mo. App. E.D. 2013) (internal quotation marks omitted).
Accordingly, Appellants' claims are not precluded based on the ground raised by the Secretary of State that LEAs were necessary and indispensable parties for purposes of enjoining the identification provisions of the Voter ID Law.
Failure to State a Claim
In analyzing whether Appellants have substantively failed to state a claim, we begin by accepting as true all facts alleged in their petition, which we have summarized previously in our ruling today. Lake , 390 S.W.3d at 889 (citing Eaton , 224 S.W.3d at 599 ).
In arguing that the Appellants have failed to state a claim, Respondents rely on their contention that Appellants were required to plead the actual costs incurred to implement the Voter ID Law at the end of the fiscal year, and that the funds appropriated for that fiscal year were insufficient to reimburse those actual costs. Respondents do not argue that the allegations of the petition are insufficient in any other respect.
Whether Appellants have adequately pleaded a claim alleging insufficient appropriation requires this court to examine the language of section 115.427.6(3). We review questions of statutory interpretation de novo. Dieser v. St. Anthony's Med. Ctr. , 498 S.W.3d 419, 430 (Mo. banc 2016). "The primary rule of statutory construction is to ascertain the intent of the legislature from the language used, to give effect to that intent if possible, and to consider words used in the statute in their plain and ordinary meaning." Id. (internal quotation marks omitted). If the statutory language is unambiguous, we "must give effect to the legislature's chosen language." Treasurer of State-Custodian of Second Injury Fund v. Witte , 414 S.W.3d 455, 461 (Mo. banc 2013) (internal quotation marks omitted). We will resort to other rules of statutory construction only where the language is ambiguous. Id. We presume every word, sentence, or clause in a statute has effect, and the legislature did not insert superfluous language.
*151 Mantia v. Mo. Dep't of Transp. , 529 S.W.3d 804, 809 (Mo. banc 2017). "In the absence of statutory definitions, the plain and ordinary meaning of a term may be derived from a dictionary, and by considering the context of the entire statute in which it appears." Id.
Section 115.427.6(3) provides that the State shall not enforce the personal identification requirements of section 115.427.6(1) if there is not a "sufficient appropriation" of state funds. Appropriations are made for each fiscal year by the General Assembly. See MO. CONST. art. III, § 36. "An appropriation is the legal authorization to expend funds from the treasury; that legal authorization requires not only the approval of the majority of the members of both houses of the legislature but also the approval of the Governor." State ex rel. Sikeston R-VI Sch. Dist. v. Ashcroft , 828 S.W.2d 372, 375 (Mo. banc 1992). "Sufficient" means "marked by quantity, scope, power, or quality to meet with the demands, wants, or needs of a situation or of a proposed use or end." WEBSTER'S THIRD NEW INT'L DICTIONARY OF THE ENGLISH LANGUAGE 2284 (unabridged ed. 1993). In the context of the allegations of this case, whether an appropriation is "sufficient" relates to whether the amount of money appropriated by the legislature is sufficient to cover the costs associated with the implementation of the statute, including the costs of providing voters with nondriver's licenses and the source documents necessary to acquire government-issued personal identification, and the costs of providing "advance notice ... in a manner calculated to inform the public generally" of the personal identification requirements.[6]
Appellants' second amended petition alleged that the appropriation to implement the Voter ID Law was insufficient. The petition alleged that the insufficiency of the appropriation was demonstrated by the disparity between the cost estimates to implement the statute in Fiscal Year 2018 which were submitted to the legislature and the legislature's actual appropriation for Fiscal Year 2018, and was demonstrated in part by the allegedly inadequate manner in which the Secretary of State sought to discharge his advance-notice obligations.
The allegations in Appellants' petition adequately pleaded a claim alleging insufficient appropriation.[7] Judgment on the pleadings and dismissal of Appellants' second amended petition was reversible error.
*152 Appellants' points on appeal are granted.
Conclusion
The trial court's grant of dismissal and judgment on the pleadings is reversed, and the cause is remanded for further proceedings consistent with this opinion.[8]
Alok Ahuja, Presiding Judge, and Thomas N. Chapman, Judge, concur.

All statutory references are to the Revised Statutes of Missouri 2016.

When this court reviews the trial court's grant of judgment on the pleadings for the defendants, we liberally construe the pleadings, accepting as true all facts alleged in the plaintiffs' petition and construing those alleged facts in a light most favorable to the pleader. Anderson v. Crawford , 309 S.W.3d 863, 866 (Mo. App. W.D. 2010).

"Missouri is not a 'notice pleading' state." ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp. , 854 S.W.2d 371, 379 (Mo. banc 1993). Instead, "[t]he Missouri rules of civil procedure require fact pleading." State ex rel. Harvey v. Wells , 955 S.W.2d 546, 547 (Mo. banc 1997). "Because Missouri is a fact-pleading state, the petition must contain a short and plain statement of the facts showing that the pleader is entitled to relief." Gerke v. City of Kansas City , 493 S.W.3d 433, 436 (Mo. App. W.D. 2016) (internal quotation marks omitted). See also Rule 55.05.

"The general rule is that a dismissal without prejudice is not a final judgment and, therefore, is not appealable." Eckel v. Eckel , 540 S.W.3d 476, 482 n.16 (Mo. App. W.D. 2018) (internal quotation marks omitted). "An exception to this general rule applies, however, where the dismissal has the practical effect of terminating the litigation in the form cast by the plaintiff." Id. (internal quotation marks omitted). "A dismissal 'without prejudice' for failure to state a claim effectively bars a plaintiff from refiling the action in its original form." Id. (internal quotation marks omitted). Thus, the trial court's dismissal effectively terminated the litigation; therefore, the dismissal is appealable, and we have the authority to review the points appealed.

The specific factual allegations of the Second Amended Petition allege that the legislature's appropriation of funds to implement the Voter ID Law in the 2017 and 2018 Fiscal Years was insufficient. Both FY2017 and FY2018 have now concluded. Despite this fact, the State has not argued that this case is moot, and at oral argument, the State's counsel acknowledged that insufficient appropriations in the 2017 and 2018 Fiscal Years could affect the enforceability of the Voter ID Law's personal identification requirements in elections held after the end of FY2018.

Notably, the State has not argued that the relevant provisions of the Voter ID Law are so vague or general, or vest so much discretion in executive or legislative officials, that the provisions are not capable of judicial enforcement. To the contrary, at oral argument the State's counsel acknowledged that the sufficiency of appropriations for implementation of the Voter ID Law could be subject to judicial review (although the State contends that this review should only occur after the conclusion of the relevant fiscal year).

Although Respondents argue that Appellants failed to state a claim because they did not allege that the actual costs the State incurred in implementing the Voter ID Law exceeded the appropriation for that purpose, their argument ignores the requirement of article IV, section 28 of the Missouri Constitution that an appropriation must precede an expenditure:
No money shall be withdrawn from the state treasury except by warrant drawn in accordance with an appropriation made by law, nor shall any obligation for that payment of money be incurred unless the commissioner of administration certifies it for payment and certifies that the expenditure is within the purpose as directed by the general assembly of the appropriation and that there is in the appropriation an unencumbered balance sufficient to pay it.
See also §§ 33.030(2), 33.040(1), and 33.170 (requiring that an appropriation precede an expenditure).

Given the procedural posture of this case, on appeal the parties have not addressed a number of significant issues which will or may arise on remand, including the burden of proof which the Appellants should be required to satisfy; the standard of review or level of scrutiny which the court should apply to the appropriations measures enacted by the General Assembly, and to the statutory-implementation decisions made by the Secretary of State or Department of Revenue; and the scope of relevant discovery and admissible evidence if this case is ultimately tried. Our opinion should not be read to address any of these unbriefed issues.