

# In the
# Missouri Court of Appeals
## Western District

JEANNE H. OLOFSON,        )
       )
       **Appellant,**        )    **WD81882**
       )
**v.**        )    **OPINION FILED: June 18, 2019**
       )
**SCOTT W. OLOFSON, IN HIS**        )
**CAPACITY AS PERSONAL**        )
**REPRESENTATIVE OF THE**        )
**ESTATE OF TOM W. OLOFSON,**        )
       )
       **Respondent.**        )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable Susan E. Long, Judge

Before Division One:  Victor C. Howard, Presiding Judge, Lisa White Hardwick, Judge
and Gary D. Witt, Judge

Jeanne Olofson ("Jeanne")[1] appeals from the trial court's judgment granting Tom

Olofson's ("Tom") Motion for Judgment on the Pleadings finding that the trial court lacked

jurisdiction and dismissed Jeanne's Motion to Set Aside the Judgment of Dissolution on

the ground of alleged fraud pursuant to Rule 74.06(b)[2] ("Rule 74.06 Motion").  Jeanne

---

[1] Because multiple individuals involved in this case have the same surname, we refer to each by their first name for purposes of clarity.  No familiarity or disrespect is intended.
[2] All rule references are to Missouri Supreme Court Rules (2018).

argues that the trial court erred in granting Tom's Motion for Judgment on the Pleadings and dismissing her Rule 74.06 Motion because Tom's death does not moot or abate her Rule 74.06 Motion. We affirm.

**Statement of Facts**

On September 19, 2014, after 55 years of marriage, Jeanne filed a Petition for Dissolution of Marriage in the Circuit Court against Tom. At the time of filing, Tom was the Chairman and Chief Executive Officer of Epiq Systems, Inc. ("Epiq"), a publicly traded company based in Kansas City, Kansas.

The parties entered into a settlement agreement regarding the division of property which was incorporated into the Judgment. The largest marital asset to be divided in the dissolution was the parties' Epiq stock and is the cause of the current dispute. Pursuant to the agreement Tom received 2,159,416 shares of Epiq stock valued at $13.50 per share totaling approximately $29 million. Jeanne received 1,076,639 shares of Epiq stock also valued at $13.50 per share totaling approximately $14.5 million. On the same day, the market price for Epiq stock closed at a price per share of $11.60. Other real estate, assets, and debts were used to balance the distribution of the assets.

On March 1, 2016, the trial court entered its Judgment and Decree of Dissolution of Marriage ("Dissolution Judgment") incorporating the terms of the parties' settlement agreement.

On June 26, 2016, Epiq received an offer from OMERS/DTI ("DTI") to buy the company at $16.50 per share. The DTI offer was subject to contingencies which were ultimately satisfied and the sale closed on September 30, 2016. Since DTI took Epiq

2

private, upon the closing of the sale, all stock was liquidated and shareholders, including Jeanne and Tom, received a cash payment based on the $16.50 per share price. Further, due to the sale of Epiq, Tom also received a gross amount of over $16 million in cash and other benefits from the sale based on his employment contract as CEO of the company.

On February 23, 2017, Jeanne filed a Motion to Set Aside the Judgment of Dissolution on the grounds of fraud pursuant to Rule 74.06(b), her Rule 74.06 Motion. In the Rule 74.06 Motion, Jeanne alleged that Tom made false statements during his deposition, claiming there was no new information regarding a potential sale of Epiq. Jeanne alleged that due to the nature of Tom's position with Epiq, he had a vast knowledge of the financial future of company, including negotiations for a potential sale, the impact on the stock price, and his payout from his employment contract upon a change in control. Jeanne further alleged that Tom failed to fully comply with discovery sought by Jeanne, including failing to provide non-public information regarding Epiq's strategic review process and offers made for the purchase of Epiq. Jeanne alleged that Tom also did not update representations he made throughout the discovery and settlement process to account for his acquisition of new information regarding the sale of Epiq.

Jeanne alleged that she made multiple attempts to receive compliance with her discovery request, including copies of minutes of the meetings of the Board of Directors and any other agreements or directives, which establish any benefits for Tom on the sale or takeover of Epiq. Jeanne alleged that in a response to a Motion to Compel Discovery based on a subpoena served upon Epiq, Epiq refused to produce any documents responsive to the subpoena other than those documents already made public and argued against any

3

further disclosure, citing to Securities and Exchange Commission ("SEC") regulations. Jeanne alleged that Epiq had received a non-binding preliminary bid to buy the company in the same timeframe when Tom and Jeanne were negotiating the final terms of their Separation Agreement. Jeanne alleged that Tom had substantial knowledge to which Jeanne was not privy regarding potential buyers for Epiq and pending bids, and the clear indication that a transaction for the sale of Epiq was imminent at a price above $13.50 per share. Jeanne alleges Tom's noncompliance with discovery requests and making of false statements during his deposition constituted fraud under Rule 74.06(b).

On April 6, 2017, Tom filed his Memorandum in Opposition, arguing, among other things, that Jeanne's Rule 74.06 Motion had not been filed within a reasonable time as required by Rule 74.06(c). On April 8, 2017, Tom died. A motion to substitute his Estate as a party was granted on June 9, 2017.[3]

On December 12, 2017, Tom moved for judgment on the pleadings on grounds that: (1) the court lacked subject matter jurisdiction because the proceeding abated upon Tom's death; (2) there is no longer any judiciable controversy before the court for which meaningful relief may be granted; and (3) because Jeanne's Rule 74.06 Motion is barred by the doctrines of *res judicata* and collateral estoppel ("Motion for Judgment on the Pleadings").

The trial court found that the relief that Jeanne ultimately seeks, the reallocation of the marital property, is legally impossible. The trial court found that the only remedy it

---

[3] While Tom's estate is the current party to this action, we refer to the estate as "Tom" for ease of discussion.

4

may provide under Rule 74.06(c) is to set aside the dissolution judgment, and there is no authority granting a trial court the ability to limit relief to the reallocation of a single marital asset. The trial court also found that it could not provide money damages under Rule 74.06. The trial court further found that setting aside the dissolution judgment would require the trial court to impermissibly adjudicate a moot controversy on hypothetical facts because one party is deceased and therefore the marital estate no longer exists. The trial court found that setting aside the dissolution judgment would put the parties in the same procedural posture as if Tom died prior to the entry of the final judgment, at which point the lawsuit would abate and the trial court would lose the authority to take further action. For these reasons, the trial court granted Tom's Motion for Judgment on the Pleadings and dismissed Jeanne's Rule 74.06 Motion. This appeal followed.

**Standard of Review**

"The appellate court conducts a *de novo* review of a trial court's grant of a motion for judgment on the pleadings based on the failure to state a claim." *Mo. State Conference of the NAACP v. State*, 563 S.W.3d 138, 146 (Mo. App. W.D. 2018). "The question presented by a motion for judgment on the pleadings is whether the moving party is entitled to judgment as a matter of law on the face of the pleadings." *Lake v. Levy*, 390 S.W.3d 885, 889 (Mo. App. W.D. 2013). "The well-pleaded facts of the non-moving party's pleading are treated as admitted for purposes of the motion." *Id*.

"In reviewing the dismissal of a petition, the sole issue to be decided is whether, after allowing the pleading its broadest intendment, treating all facts alleged as true and construing all allegations favorably to the plaintiff, the plaintiff is entitled to relief." *Id.*

5

"If the petition sets forth any set of facts that, if proven, would entitle the plaintiff to relief, then the petition states a claim." *Id.* "We review the law only to ascertain whether [Appellant's] interpretation is viable, thereby stating a claim for relief in [her] petition." *Id.* "If [Appellant's] petition states a claim upon which relief can be granted, then judgment on the pleadings was not appropriate." *Id.*

## Analysis

Jeanne raises one point on appeal. In her sole point, Jeanne argues that the trial court erred in granting Tom's Motion for Judgment on the Pleadings because her Rule 74.06 Motion was not moot or abated by Tom's death. Jeanne argues that Missouri law regarding abatement does not apply when a party dies after the trial court enters its judgment dissolving the marriage and the only issue remaining concerns the division of the marital estate. Jeanne argues that if her allegations are taken as true, "Tom defrauded her in the dissolution action and she is entitled to Rule 74.06 relief from the division of the marital estate, rather than the dissolution itself."

"It is undisputed that a court's order as it affects distribution of marital property shall be a final order not subject to modification." *Young v. Young*, 273 S.W.3d 86, 88 (Mo. App. E.D. 2008) (citing Section 452.360.2). "However, Rule 74.06 allows the decree of dissolution, as well as any division of property incorporated or included therein, to be set aside for one of the reasons set out in Rule 74.06(b)[.]" *Id.* Rule 74.06(b) reads in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment or order for the following

6

reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic) ….

While, Rule 74.06 allows "any division of property incorporated or included therein, to be set aside. . . . Rule 74.06 makes no provision for the amendment or modification of a judgment, or for relief from part of a judgment …." *Spicuzza v. Spicuzza*, 886 S.W.2d 660, 661 (Mo. App. E.D. 1994). While 74.06 "enables the court to set aside a decree of dissolution and division of property for reasons specified in the rule … Rule 74.06 makes no provision for amendment or modification of part of a judgment." *Young*, 273 S.W.3d at 89. Rule 74.06 does not "provide for relief from *part of a judgment*[.]" *Id*. "If [Rule 74.06(b)] applies, the judgment is vacated." *Lombardo v. Lombardo*, 120 S.W.3d 232, 241 n..6, (Mo. App. W.D. 2003) (citing *Settles v. Settles*, 913 S.W.2d 101, 103 (Mo. App. S.D. 1995)).

Jeanne attempts to argue that Rule 74.06 may be used to grant her relief from the division of marital property without having to set aside the entire dissolution judgment. However, Missouri case law is clear that if Rule 74.06(b) is applied then the entire dissolution judgment can be set aside. Part of the judgment cannot be set aside nor is the judgment subject to modification under the Rule. The only relief afforded under Rule 74.06(b) is relief from the entire dissolution, not relief from just the property division. To the extent that Jeanne is seeking relief in the form of setting aside only the property division and not the judgment as a whole, she is asking to modify the property division, which cannot be done. *Young*, 273 S.W.3d at 89.

7

Jeanne cites to *Essig v. Essig*, 897 S.W.2d 151 (Mo. App. W.D. 1995) and *Alexander v. Sagehorn*, 600 S.W.2d 198 (Mo. App. S.D. 1980) to support the proposition that the property division alone can be set aside without setting aside the entire divorce decree. This reliance is misplaced. In *Essig v. Essig*, Mrs. Essig asked "the trial court to set aside its decree dissolving her marriage to [Mr. Essig] so it could reconsider the couples division of property." 897 S.W.2d at 151. Unlike the case at bar, Mr. Essig was still alive throughout the underlying case and the appeal and her motion specifically requested that the court "set aside its decree of dissolving her marriage." *Id.* In *Essig*, the trial court ruled that it had lost jurisdiction to consider her motion based on the passage of time since the judgment was entered. *Id.* at 153. The court of appeals ruled that her motion was filed within a reasonable time and less than one year since the judgment was entered, therefore the case was remanded for the trial court to rule on the merits of her motion. *Id.* at 153-54. *Essig* provides no support for Jeanne's argument.

In *Alexander v. Sagehorn*, wife brought a separate action in equity to set aside the portion of the dissolution decree which divided the party's property based upon fraud. 600 S.W.2d at 199-200. The trial court did set aside part of the decree of dissolution and provided for a different distribution of the marital property. *Id*. at 200. Once again, husband was alive throughout the proceedings and more importantly, this decision was handed down in 1980, four years prior to the adoption Rule 74.06 and all subsequent case law involving what relief may be granted under Rule 74.06. *Alexander v. Sagehorn* cannot be used to demonstrate what relief may be granted under Rule 74.06 when Rule 74.06 did not exist at the time the court's ruling.

8

Finally, Jeanne relies on the Supreme Court's holding in *Hemphill v. Quigg,* 355 S.W.2d 57 (Mo. 1962) to support her arguments. This case was decided over 20 years prior to the adoption of Rule 74.06 and provides no support for the relief that may be available under that Rule. In *Hemphill* husband and wife were divorced in 1942, husband remarried in 1946 and after his death in 1955, wife, "an insane woman" brought an action in equity through a guardian to set aside the dissolution decree. *Id.* at 58-59. The Supreme Court affirmed the trial court's denial of wife's request to set aside the dissolution. *Id.* at 64. Once again this case provides no authority for the issues presented in the present action.

To the extent that Jeanne is arguing that the entire decree can be set aside, and then immediately reinstated save for the property division, this argument has been addressed by the Southern District of this Court in *In re Marriage of Ulmanis*, 23 S.W.3d 814 (Mo. App. S.D. 2000). In *Ulmanis,* Husband attempted to argue that Rule 74.06(b) empowered the trial court to set aside the entire decree, then immediately reinstate all of it except the maintenance and child support provisions. *Id.* at 817. The court found that "[s]uch an interpretation would allow a trial court, by such machinations, to grant relief from part of a judgment, contrary to *Settles* [*v. Settles*, 913 S.W.2d 101 (Mo. App. S.D. 1995)] and *Spicuzza* [*v. Spicuzza*, 886 S.W.2d 660, 661 (Mo. App. E.D. 1994)]." *Id* at 818.

Therefore, the only relief that Jeanne can seek under Rule 74.06(b) is to set aside the entire dissolution judgment and then re-litigate all of the issues in the dissolution. However, "[g]enerally, jurisdiction abates in a dissolution of marriage action where one of the parties dies while the case is pending." *Linzenni v. Hoffman*, 937 S.W.2d 723, 726 (Mo. banc 1997). Because relief under 74.06(b) would set aside the entire dissolution

9

judgment, the parties would be put in the same position they were before the entry of the original judgment. *See Ball v. Shannon*, 975 S.W.2d 947, 949 (Mo. App. S.D. 1998). Any proceedings to then dissolve the marriage and divide marital property would be abated by Tom's death. Therefore, the trial court would have no authority to proceed with the reallocation of assets that Jeanne is currently seeking.

Jeanne argues that the doctrine of abatement should not apply because the dissolution of the marriage between her and Tom was ordered prior to Tom's death and all that needs to be addressed is the division of marital property. Jeanne cites to *Linzenni* for the proposition that "the doctrine of abatement is inapplicable where a dissolution of marriage has been ordered prior to the death of a party, even though the order may be partial, interlocutory or not a final judgment resolving all issues in the case." *Linzenni*, 937 S.W.3d at 726. In *Linzenni*, a dissolution of marriage had been ordered and noted in the trial court's docket entry the day prior to Husband's death, and a decree was also dated by the trial judge on that same day but the decree was not reflected as filed in the docket entries by the court clerk until the day of Husband's death. *Id.* at 724-25. The Supreme Court held that based upon the Rule 74.01 in effect at that time, a final judgment as to the issue of the dissolution of the marriage had been entered. *Id.* at 726. Therefore, the doctrine of abatement was inapplicable and the trial court retained the authority to subsequently divide the party's marital property. *Id.* Based on the holding of *Linzenni* the courts have consistently held that if the trial court has entered a formal written judgment or decree meeting the requirements of Rule 74.01 which dissolves the party's marriage, but the court has not yet ruled on the division of property, that the doctrine of abatement is inapplicable

10

and the case may proceed on the remaining property issues in spite of the death of one of the parties. *McMilian v. McMilian,* 215 S.W.3d 313, 315-16 (Mo. App. W.D. 2007); *Simpson v. Strong,* 234 S.W.3d 567, 574-75 (Mo. App. S.D. 2007).

However, in the case currently before this Court, if Rule 74.06(b) is applied then the entire dissolution judgment must be set aside. The legal effect of setting aside the dissolution decree under 74.06(b) is that the dissolution decree never occurred, and therefore, any proceeding then to dissolve the marriage and divide the marital property would be abated. If there was no judgment dissolving the party's marriage at the time of Tom's death, the action abates and the court is without authority to proceed with a dissolution action or to divide the marital property. *Estate of Hayes v. Hayes,* 967 S.W.2d 305, 307 (Mo. App. W.D. 1998). Jeanne's only claim for relief is a redistribution of marital property, which the trial court would have no authority to do if Rule 74.06(b) was applied and the dissolution judgment was set aside. "When an event occurs that makes a court's decision unnecessary or makes granting effectual relief by the court impossible, the case is moot and generally should be dismissed." *Henry v. Farmers Ins. Co.*, 444 S.W.3d 471, 477 (Mo. App. W.D. 2014) (quoting *Atteberry v. Mo. Bd. of Prob. & Parole*, 193 S.W.3d 444, 446 (Mo. App. W.D. 2006)). Tom's death renders an application of Rule 74.06(b) moot because the effectual relief Jeanne is seeking, the redistribution of marital property, is impossible since the trial court would lack authority to grant a dissolution of the marriage, which is the gateway to the authority to divide the marital property.

The trial court did not err in granting Tom's Motion for Judgment on the Pleadings finding that the trial court lacked authority and dismissing Jeanne's Rule 74.06 Motion

11

because the case became moot as a result of Tom's death therefore making the grant of effectual relief impossible.

Point One is denied

## Conclusion

The trial court's judgment is affirmed.

_____
Gary D. Witt, Judge

All concur